Filed 11/22/24  P. v. Harper CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081977 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN308840) |
| JULIE ELIZABETH HARPER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed and remanded with directions.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Julie Elizabeth Harper of the second degree murder (Pen. Code,[1] 187, subdivision (a)) of her husband Jason Harper and found

---

[1]     Undesignated statutory references are to the Penal Code.

true allegations that she personally discharged a firearm (§ 12022.5, subd. (a)) and that the firearm's discharge resulted in his death (§ 12022.53, subd. (d)). The court sentenced her to 40 years to life in prison: 15 years to life for the murder conviction plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement. The court stayed a 10-year term for the section 12022.5, subdivision (a) firearm enhancement. It imposed restitution fines of $10,000. (§§ 1202.4, sub. (b), 1202.44).

This is our fourth time considering Harper's sentence. In her first appeal, we remanded the matter for the trial court to exercise newly-granted discretion in section 1385 (Sen. Bill No. 620) as to whether to strike the firearm enhancements. (*People v. Harper* (Jan. 5, 2018, D069632) [nonpub. opn.].) The trial court declined to strike the section 12022.53, subdivision (d) firearm enhancement.

In Harper's second appeal (*People v. Harper* (Feb. 26, 2020, D074943) [nonpub. opn.]), she argued in part that she was entitled to a remand under *People v. Morrison* (2019) 34 Cal.App.5th 217 because the trial court was not aware of its discretion to impose a lesser, uncharged gun enhancement under section 12022.53, subdivisions (b) or (c). She also argued the court abused its discretion and violated her due process rights by declining to strike the section 12022.53, subdivision (d) enhancement. We rejected the arguments and affirmed the trial court's decisions. In part, we held remand was not required because the court was presented with a lesser sentencing option than the 25-year-to-life firearm enhancement and was thus aware of the scope of its discretion. (*People v. Harper, supra,* D074943.)

Harper appealed to the California Supreme Court, which granted and held her petition, and subsequently transferred the matter to this court with directions to vacate our decision and reconsider the cause in light of *People v.*

2

*Tirado* (2022) 12 Cal.5th 688. We did so, and directed the trial court to consider whether to "exercise its discretion to strike the section 12022.53 subdivision (d) firearm enhancement or to impose a lesser firearm enhancement, as well as any other new sentencing laws applicable to Harper's sentence." (*People v. Harper, supra,* D074943.)

At Harper's March 2023 resentencing hearing, the trial court reimposed the 40-year sentence, again declining to strike the section 12022.53, subdivision (d) firearm enhancement. It stayed all fines and fees pending a hearing regarding Harper's ability to pay them.

In this appeal, Harper contends the court erroneously (1) declined to strike the section 12022.53, subdivision (d) firearm enhancement based on the relevant sentencing factors; (2) failed to order an updated probation report, and, alternatively, defense counsel provided ineffective assistance by failing to request one; and (3) imposed a $10,000 restitution fine without determining her ability to pay under *People v. Duenas* (2019) 30 Cal.App.5th 1157 (*Duenas*). She further argues that (4) her counsel erroneously failed to challenge the stayed section 12022.5, subdivision (a) firearm enhancement on grounds none of the aggravating factors were found beyond a reasonable doubt; and (5) we should remand this matter for the trial court to properly calculate her custody credits. We affirm the court's resentencing decision but find merit in Harper's contentions regarding the *Duenas* issue, the stayed section 12022.5, subdivision (a) issue and the custody credits issue; accordingly, we remand with directions set forth below.

3

FACTUAL AND PROCEDURAL BACKGROUND[2]

Before Harper's March 2023 resentencing hearing, the People in a sentencing memorandum argued against the court striking the section 12022.53 subdivision (d) enhancement. They also included victim impact letters from the deceased's mother. Harper moved to reduce her conviction from murder to manslaughter under section 1181, subdivision (6), and attached numerous laudatory "chronos" or evaluations from correctional officers and others regarding her rehabilitation while incarcerated. The People also submitted a resentencing brief.

The court acknowledged reading and reviewing the above documents. The following individuals spoke at the hearing: Harper, her father and a neighbor of his, Jason Harper's mother and Jason Harper's cousin.

*Harper's Arguments*

At the resentencing hearing, defense counsel argued the court should dismiss the section 12022.53 subdivision (d) enhancement because of certain circumstances in mitigation listed in the California Rules of Court: that the victim was an initiator or willing participant or aggressor or provoker of the incident (Cal. Rules of Court, rule 4.423(a)(1)); the crime was committed because of an unusual circumstance, such as great provocation that is unlikely to recur (Cal. Rules of Court, rule 4.423(a)(3)); and Harper suffered from repeated or continuous physical, sexual or psychological abuse (Cal. Rules of Court, rule 4.423(a)(9)). Defense counsel also argued there were factors in mitigation under section 1385: Harper had no prior criminal record; when she committed the murder, she was suffering from a mental or physical condition, thus significantly reducing her culpability for the crime; and she

---

[2] The facts of the underlying offense are recounted in our prior opinions and need not be repeated here.

had no disciplinary actions since her incarceration. Defense counsel further argued Harper had paid part of the restitution, she was no longer using illicit drugs, and she was almost 50 years old; therefore, the probability of recidivism was negligible.

*The People's Arguments*

The prosecutor, summarizing his arguments from his sentencing brief regarding the factors set forth in section 1385, subdivisions (a) through (i) argued, "I believe that [Harper] is still a danger. I know it's very easy for us in society to look at [her] and make comments like, [']look, she's just a woman. At the time she was just a housewife and the victim was just her husband and he's no longer here. So this woman who is a housewife who killed her husband is no longer going to be a danger to society.['] [¶] But I don't think that's correct. I think the fact that a person is willing to intentionally shoot and kill her husband with a firearm is a danger to the community. That's just an extraordinary action that ordinary law-abiding citizens don't take. That's why this is such a serious crime. That's why murder receives the most harsh sentence. [¶] The jury found that [Harper] committed this crime with malice aforethought, that this was a malicious action. And I think that the factors that the—she had at the time of this crime are still present and that she is still a danger."

The prosecutor added, "[T]he victim impact should be given the greatest weight by this court because the victim's family is the one who has suffered the greatest." He also elaborated, "The fact that [ ] Harper used a gun enhanced her lethality. It made her—made it easier and faster to kill [her husband]. [¶] As the court knows, [he] was a large, strong individual. He [was] a college athlete. He played volleyball and baseball. He was a [physical education] coach as well as a coach of the high school teams at

5

Carlsbad High School. And without the use of the gun, I don't think [Harper] would have been able to accomplish this murder. [¶] . . . [¶] [Harper] not only used the gun to kill [her husband], but she also disposed of the gun improperly in order to conceal the evidence and to this day the gun has not been found. I don't know where the gun is. Only [ ] Harper knows where the gun is. I don't know if it's been found by other criminals and being used in crimes today. [¶] I will also just remind the court that the bullet that killed [Harper's husband] came from behind."

*The Court's Ruling*

The court declined to exercise its discretion to reduce the murder to manslaughter. It explained the record should be "crystal clear" that it understood its discretion to strike, dismiss, or impose a lesser enhancement. In refuting defense counsel's argument that Harper was the victim of abuse, the court made a credibility determination: "Her testimony simply was not credible and her testimony does not support the conclusion that this killing occurred without malice. [¶] It does not support the conclusion that her killing occurred as a result of sudden quarrel or heat of passion or that it was done in any way in self-defense."

The court concluded Harper's actions had "a profound effect on a number of people" including the victim's children, his parents, and Harper's father. It acknowledged she had received numerous laudatory evaluations, and was "nothing less than a model prisoner while she's been in custody." It also recognized she had no prior criminal record. It further concluded based on its presiding over Harper's two trials that it was "not a close call . . . that she is still a danger to society." The court pointed out Harper shot her husband in the back. It concluded that "reducing her sentence and releasing her this—at this point or at any time in the near future . . . would endanger

6

public safety based on the actions that she took in this case." It therefore declined to strike the enhancement.[3]

## DISCUSSION

### I. *Discretion Under Section 1385*

Harper contends: "By requiring sentencing courts to give great weight to the enumerated circumstances, section 1385 creates a rebuttable presumption that dismissal of the enhancement is in the furtherance of justice." (Italics and some capitalization omitted.) She asserts there was no evidence that dismissal of the section 12022.53, subdivision (d) enhancement would endanger public safety; therefore, the evidence weighs greatly in favor of dismissal. Harper further argues the court "failed to give due weight to mitigating circumstances listed in the California Rules of Court or to give great weight to the enumerated sentencing enhancements in section 1385." (Some capitalization omitted.)

---

[3]   Harper submitted for this court's consideration this court's ruling in *People v. Gonzalez* (2024) 103 Cal.App.5th 215, in which we concluded that the trial court erred in resentencing a defendant under section 1385, subdivision (c)(2). In that case, the trial court declined to exercise its discretion to dismiss a firearm enhancement based on its finding the defendant " 'presently . . . does represent a danger to society.' " (*Id.* at p. 224.) We concluded, "The plain words of the statute do not support the trial court's singular focus on whether the defendant *currently* poses a danger." (*Id.* at p. 228.) Here, the court's ruling did not singularly focus on the current danger Harper posed. Rather, it expressly referred to the danger her release presented either at this point or in an unspecified near future. Thus, we conclude our analysis in *Gonzalez* is inapplicable here.

Further, in *Gonzalez*, we stated "it is conceivable that, if the trial court holds a new sentencing hearing in which it does not limit its inquiry to Gonzalez's current dangerousness, it will decide to exercise its discretion under section 1385, subdivision (c)(2) in a different manner." (*Gonzalez, supra,* 103 Cal.App.5th at p. 231.) Here, based on the trial court's statements regarding its awareness of its discretion, there is no likelihood the court would exercise its discretion differently.

Under the present version of section 12022.53, a court "may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h); *People v. Tirado, supra*, 12 Cal.5th at pp. 695-696; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-16.)

Effective January 1, 2022, the Legislature in Senate Bill No. 81 (Stats. 2021, ch. 721, § 1) amended section 1385 to provide that, with an exception not applicable here, a court "[n]otwithstanding any other law, . . . shall dismiss an enhancement if it is in the furtherance of justice to do so . . . ." (§ 1385, subd. (c)(1); see *People v. Walker* (2024) 16 Cal.5th 1024, 1033; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.)

Section 1385 subdivision (c)(2) provides in part: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of [nine listed] mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." The statute adds that "[w]hile the court may exercise its discretion at sentencing, this subdivision does not prevent a court from exercising its discretion before, during, or after trial or entry of plea." (§ 1385, subd. (c)(3).)

Harper focuses on three mitigating circumstances as being relevant here. One is when applying an enhancement could result in a sentence of over 20 years under section 1385, subdivision (c)(2)(C), which provides that when "[t]he application of an enhancement could result in a sentence of over

8

20 years[ ] . . . the enhancement shall be dismissed."[4]  Another relates to when the offense is connected to mental illness.  (§ 1385, subd. (c)(2)(D).)  The third is when the offense is connected to prior victimization or childhood trauma.  (§ 1385, subd. (c)(2)(E).)

We review for abuse of discretion the "court's determination that dismissal of [an] enhancement would endanger public safety."  (*People v. Mendoza, supra*, 88 Cal.App.5th at p. 298.)  Further, in assessing sentencing issues, we apply a presumption of regularity of judicial exercises of discretion.  (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)  It is Harper's burden in the face of those presumptions to affirmatively demonstrate error.  (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.)

In August 2024, after Harper's briefing was concluded in this matter, the California Supreme Court rejected the presumption argument, holding section 1385 does not create a rebuttable presumption in favor of dismissal but, rather, gives the court discretion to dismiss an enhancement when it is in the " 'furtherance of justice' " to so do.  (*People v. Walker, supra,* 16 Cal.5th

---

4    Despite the "shall be dismissed" language in section 1385, subdivisions (c)(2)(B) and (c)(2)(C), California courts have rejected arguments that dismissal is mandated in every case when those mitigating circumstances exist irrespective of a court's finding that an enhancement's dismissal would endanger public safety.  (*People v. Mendoza, supra*, 88 Cal.App.5th at pp. 295-298; *People v. Lipscomb, supra*, 87 Cal.App.5th at pp. 17-20.)  In *Mendoza*, the court considered the directive in section 1385, subdivision (c)(2)(C) in the context of the entire statutory framework and concluded that the statute meant "that if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances.  [Citation.]  The 'shall be dismissed' language in section 1385[, subdivision] (c)(2)(C), like the language of all of the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety."  (*Mendoza*, 88 Cal.App.5th at p. 296.)

9

at p. 1033.) Because there is no rebuttable presumption, Harper does not come within the exception and her argument under section 1385 fails.

Harper further argues insufficient evidence supports the court's findings that the dismissal of the enhancement would not further the interest of justice, and would endanger public safety. She specifically cites a therapist's notes and the laudatory evaluations from different correctional officers. However, the court specifically took this into account, acknowledging she had been a "model prisoner," and questioning if it would be the same "[i]f she's released and she's not in a fishbowl where she's being controlled." It concluded that "based upon the actions that she took in shooting an unarmed man in the back, . . . releasing her would endanger the public safety."

As for Harper's arguments she produced evidence showing she was a prior victim, the court specifically made a finding she was not credible on this point. As a general matter, we do not reweigh a trial court's credibility determination. (See *People v. Tully* (2012) 54 Cal.4th 952, 979 [reviewing court " 'must accept the trial court's resolution of disputed facts and its assessment of credibility' "].)

Harper also contends, "While the court essentially found there were no mitigating circumstances, the impact to victims and their views on the offense and Harper were primary in the court's statement of reasons as to why reducing Harper's sentence would not further the interest of justice. These elements were therefore given disproportionate and undue weight in light of the overwhelming evidence from [the California Department of Corrections and Rehabilitation] that dismissal of the gun enhancement would further justice and not endanger to [*sic*] public safety." But the court was entitled to take into account the impact of the offense on the victims. (Cal.

Const., art. I, § 28, subd. (b) ["Criminal activity has a serious impact on the citizens of California. The rights of victims of crime and their families in criminal prosecutions are a subject of grave statewide concern"].) Moreover, under our standard of review, we do not reweigh its determination. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

## II. *Updated Probation Report*

Harper contends the court erroneously failed to order an updated probation report: "This omission constituted error that violated not only the state's procedural safeguards, but also [her] constitutional rights to due process and a fair hearing. The error was prejudicial because it deprived her of the benefit she should have received, had the court properly considered the striking evidence of [her] rehabilitation and reform—more than seven years of outstanding behavior, programming, and achievements while incarcerated. [Her] sentence should be vacated and the matter remanded for a resentencing at which the court would have the benefit of an updated probation report and give due weight to [her] post-conviction conduct as evidence that the dismissal of the gun enhancement would not pose a risk to public safety."

We conclude this claim is forfeited because Harper failed to raise it in the trial court. (See *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1433 ["we conclude defendant has waived [her] right to object to the absence of a supplemental report by failing to do so in the trial court"].) In any event, Harper claims the court needs an updated probation report to enable it to consider "striking evidence of [her] rehabilitation and reform." But as stated, the court already considered her laudatory evaluations for that purpose, and was unpersuaded to strike the gun enhancement on that basis. Therefore, the lack of an updated probation report did not prejudice Harper.

11

### III. *Restitution Fine*

Harper contends: "[t]he federal and state constitutional rights to due process and equal protection require that the $10,000 restitution fine be stayed in the absence of the prosecution's proof and the court's finding that [she] had the ability to pay." (Some capitalization omitted.)

The People respond that Harper misconstrues the court's ruling, and they cite to the court's different rulings and statements on this issue: "In an order dated September 26, 2022, the court ruled that all of [Harper's] 'fines and fees are subject to . . . *Duenas*[, *supra,* 30 Cal.App.5th 1157] and [her] ability to pay.' . . . At the resentencing, on March 9, 2023, the court stated that it 'already found that the fines were subject to the *Duenas* decision.' . . . Later, the court reiterated that it had 'previously imposed some fines subject to the *Duenas* ability to pay decision.' . . . A sentencing minute order dated the same day as the second resentencing states that 'All fines + fees stayed pending ability to pay hrg [*sic*].' . . . For all these reasons, it appears that the $10,000 fine was imposed subject to [Harper's] ability to pay. Thus, [her] claim fails from the start."

In reply, Harper agrees with the People, but contends we should remand for the court to correct its abstract of judgment to conform to its minute order.

At the hearing, Harper's counsel argued that Harper paid the actual restitution fine, which was in excess of $10,143.60. She further requested the court reduce the other restitution fine from $10,000 to $300. The court responded that it was aware the fines were subject to a finding of ability to pay under *Duenas, supra,* 30 Cal.App.5th 1157. The court accepted defense counsel's representation that the restitution fine was paid. It did not reduce the other restitution fine or hold a hearing regarding Harper's ability to pay

12

it, but its minute order indicated that all fees and fines would be subject to such a hearing.

In light of the court's ruling on this matter, we conclude it intended to evaluate the restitution claim under *Duenas*; accordingly, it is appropriate that on remand the trial court should conduct a hearing for that purpose.

IV. *Stayed Firearm Enhancement*

Harper contends the court failed to address the stayed upper term firearm enhancement under section 12022.5, subdivision (a) despite the fact that under a recent change in the law, section 1170, subdivision (d)(1) now creates a presumptive mandate for the court to impose a middle term, which presumption can be overcome only if a defendant admits to aggravating factors, or a jury or the court finds aggravating factors beyond a reasonable doubt. She alternatively argues her counsel provided ineffective assistance by failing to raise it at the resentencing hearing. She points out this court previously permitted her to raise this matter at resentencing. Specifically, we ruled, "Because we remand the matter for resentencing, Harper can present her sentence-related arguments to the trial court on remand. [Citation.] We express no view on the sentence Harper may receive under the new laws." (*People v. Harper, supra,* D074943.)

The People argue the issue is forfeited because defense counsel failed to raise it at the resentencing hearing. Further, counsel did not provide ineffective assistance as she might have reasonably concluded that raising the issue would have required the court to revisit all aggravating factors to decide if they warranted imposing the upper term. They also claim any error was harmless as the trial record shows the jury would have found true beyond a reasonable doubt at least one of the aggravating factors listed in the probation report.

13

We recognize that Harper did not raise the matter in the resentencing hearing. However, in our disposition, we directed the trial court to conduct the inquiry: "Harper's sentence is vacated and the matter remanded for resentencing. On remand, the trial court *shall* consider *Tirado, supra,* 12 Cal.5th 688 and whether to exercise its discretion to strike the section 12022.53 subdivision (d) firearm enhancement or impose a lesser firearm enhancement, *as well as any other new sentencing laws applicable to Harper's sentence.*" (*People v. Harper*, *supra,* D074943, italics added.)

Effective January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, subdivision (b), which guides the trial court's discretion in sentencing a defendant when the applicable statutes specify three possible terms for imposition of a judgment of imprisonment. (§ 1170, subd. (b).) As amended, section 1170, subdivision (b), now provides the middle term of imprisonment as the presumptive sentence, and it permits a trial court to impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2).)

Under the amended statute, the truth of any facts in support of an aggravating circumstance must be tried in a bifurcated proceeding, except where the evidence is also relevant to prove or defend against a charged offense or enhancement. (§ 1170, subd. (b)(2).)

In *People v. Lynch* (2024) 16 Cal.5th 730, the California Supreme Court explained that "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch, supra,* 16 Cal.5th at p. 768.) The Supreme Court further resolved a

14

split in authority to conclude that any such error "is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*Id.* at pp. 768-769.)

The Supreme Court in *Lynch* also recognized that section 1170 "alter[ed] the trial court's sentencing discretion" in that the "current statute narrows [the trial court's] authority by creating a presumption against the upper term, which may be overcome only if the required facts are properly proven and the court concludes that term is justified." (*Lynch, supra,* 16 Cal.5th at p. 773.) Because a trial court applying the former version of section 1170 would not have been guided by this constraint on its discretion, "[i]n this circumstance, 'it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing.' " (*Id.* at p. 774.) Thus, regardless of whether the aggravating factors upon which the court relied would have been found true beyond a reasonable doubt by a jury, remand is still required where the record does not suggest how the trial court would have exercised its discretion had it considered the standards set forth under the amended version of section 1170. (*Id.* at p. 777.)

Here, the record does not disclose which aggravating factors the trial court relied upon in imposing the upper term on the stayed firearm enhancement under section 12022.5, subdivision (a). We acknowledge the court has expressed its intent to impose the maximum term possible on Harper. Nonetheless, the absence of reasons for the court's upper term sentence prevents us from concluding the trial court would have exercised its discretion in the same way when properly considering the altered scope of its

15

discretion under the amended version of section 1170.  Accordingly, as we are already remanding the matter, the court is directed to address this issue as well.  Again, we express no opinion on how the court should exercise its discretion.  In light of our analysis, we need not address the ineffective assistance of counsel issue.

## V.  *Abstract of Judgement*

Harper contends we should remand this matter for the trial court to calculate and award her custody credits from the date of her arrest through the date of her resentencing.  She also seeks additional credits for a period when she was released on home detention with electronic monitoring.

The People concede the court "failed to impose custody credits for the time that [Harper] spent in custody before her final resentencing."

At the resentencing hearing, Harper raised this issue, but the parties did not agree on the exact number of credits she was owed.  The court stated that when the Department of Corrections and Rehabilitation provided updated credits, they would be awarded to Harper.  Its minute order is in accord.  We remand for the court to comply with its prior ruling to calculate and award updated credits for Harper.

## DISPOSITION

The judgment is affirmed.  We remand for the trial court to, consistent with this opinion, address Harper's ability to pay restitution, award Harper updated custody credits, and address the stayed 10-year sentence imposed on the section 12022.5, subdivision (a) enhancement.  It is directed to prepare a modified abstract of judgment and forward a certified copy of it to the Department of Corrections and Rehabilitation.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.